[Civ. No. 3045. Second Appellate District, Division Two.—December 15, 1919.]

## W. A. STRONG, Respondent, v. CLARA R. SHATTO, Appellant.

[1] COMMON LAW — INTERPRETATION OF—EFFECT OF DECISIONS OF UNITED STATES COURTS.—In determining the doctrine of the common law, the courts may look to the decisions of the courts of the United States, as well as those of England, for their interpretation.

[2] DEEDS—RESTRICTIVE COVENANTS—REVERSION — VESTED ESTATE — RULE AGAINST PERPETUITIES.—Under section 768 of the Civil Code, where the covenants in a deed limit the use of the premises to residence purposes, prescribe the nature, quality, and cost of the buildings to be erected thereon, and provide, as to the grantor therein, that "the breach of any of the foregoing conditions shall cause said premises together with the appurtenances to be forfeited to and to revert to the said grantor, his heirs, successors, and assigns, each of whom shall have the right of immediate entry upon said premises in the event of any such breach," the estate re-

————————

1. What the common law includes, notes, Ann. Cas. 1913E, 1222; Ann. Cas. 1918A, 968.

served by the grantor is in the nature of a reversion or vested estate which is not within the rule against perpetuities.

[3] ID. — RESERVATION OF CONDITIONAL FORFEITURE — REMOTENESS— VALIDITY.—Where a deed, after limiting the use of the premises to residence purposes, and prescribing the nature, quality, and cost of the buildings to be erected thereon, provides, as to the grantor therein, that "the breach of any of the foregoing conditions shall cause said premises together with the appurtenances to be forfeited to and to revert to the said grantor, his heirs, successors and assigns, each of whom shall have the right of immediate entry upon said premises in the event of any breach," this latter conditional forfeiture reserved is not void for remoteness.

[4] ID.—CHANGE OF CONDITIONS—QUIETING TITLE—EQUITY.—The rule that equity will not enforce restrictions on the use of property where the reason and justification for them has failed through changed conditions does not go the extent of permitting parties whose land is subject to the legal restraint of such limitations to bring an action to quiet their title against such contractual obligation, because of changed conditions.

[5] ID.—INCREASED VALUE OF PROPERTY FOR BUSINESS PURPOSES—EN-FORCEMENT OF COVENANTS.—The mere fact that the property has become more desirable or valuable for business than for residence purposes will not necessarily defeat an application for equitable relief where the restriction, notwithstanding the change of conditions, still is of substantial advantage to the dominant property.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

Anderson & Anderson for Appellant.

Bradner W. Lee, Bradner W. Lee, Jr., Kenyon F. Lee, and W. A. Strong for Respondent.

Leon F. Moss, as *Amicus Curiae.*

SLOANE, J.—This action was brought to quiet title as against certain conditions subsequent contained in a deed through which plaintiff's title is deraigned.

Without setting forth the conditions *in extenso,* it is sufficient for the discussion of the issues presented on this ap-

4. Right to enforcement of building restrictions as affected by change in neighborhood, note, 28 L. R. A. (N. S.) 707.

peal to state that they limit the use of the premises to residence purposes only, prescribe the nature, quality, and cost of buildings to be erected thereon, and provide that "as to the grantor herein, the breach of any of the foregoing conditions shall cause said premises together with the appurtenances to be forfeited to and to revert to the said grantor, his heirs, successors and assigns, each of whom shall have the right of immediate entry upon said premises in the event of any such breach." Judgment was for plaintiff and defendant appeals.

The question presented in the trial court, and decided against, was whether or not the conditions subsequent, created in the deed of a grantor, upon the breach of which the grantor reserves to himself and his heirs the right of re-entry forever, are valid and enforceable against the grantee's successors.

Respondent's counsel concede, as we understand their argument, that the conditions and reservations are precisely such as have been upheld by the courts of this state in numerous decisions, notably in the cases of *Firth* v. *Marovich,* 160 Cal. 257, [Ann. Cas. 1912D, 1190, 116 Pac. 729]; *Quatman* v. *McCray,* 128 Cal. 285, [60 Pac. 855]; *Johnston* v. *City of Los Angeles,* 176 Cal. 479, [168 Pac. 1047], and *Southern Pacific R. R. Co.* v. *Blaisdell,* 33 Cal. App. 239, [164 Pac. 804]. These authorities establish the doctrine that such conditions of forfeiture are not against public policy or violative of the rule against restraints upon alienation. But respondent raises the point, which his counsel claim has never been presented or passed upon by the courts of this state, that such conditions and limitations are obnoxious to the rule against perpetuities; that is, as we understand the application of the doctrine, that there is an attempt here to create an estate the vesting of which depends upon what may be a very remote contingency, far beyond the limitations of the rule against perpetuities. If such is the case, and the question is a new one, the doctrine of *stare decisis* does not apply, and we are at liberty to consider the point on its merits. But, in view of the many decisions in this state, and in other jurisdictions of this country where forfeitures have been upheld under building restrictions of this character, there should be very convincing authority to

justify the disturbance of the established reliance upon such contracts throughout the business world.

Respondent rests his contention for this application of the rule against perpetuities upon the authority of certain comparatively recent English cases, which seem to hold that reservation of such restrictive limitations in deeds, or so-called building restrictions, is an attempt to create a contingent estate, which may vest in the grantor or his successors at an indefinite period beyond that permitted by the rule against perpetuities. (*Dunn* v. *Flood,* 25 Ch. Div. 629, 28 Ch. Div. 586; *In re Hollis Hospital,* [1899] 2 Ch. 540; *In re Da Costa,* [1912] 1 Ch. 337.) The English doctrine is recognized in Lewis on Perpetuities, sections 616, 617, and Gray on Rule Against Perpetuities, third edition, sections 299 to 305. The learned author of the latter work approves the application of the rule to the class of conditions involved here, as made by the English cases cited, but at the same time says: "The great concensus of authority, although without any consideration of the question involved, may perhaps be held to settle the law in the United States and to create in this country an exception, arbitrary though it be, to the rule against perpetuities."

While it is true that in the great majority of decisions upholding conditions of this character, where the forefeiture falls beyond the limits of the rule against perpetuities, the application of the rule was not discussed, yet it is not the fact that the application of the rule has been entirely unconsidered in the courts of this country. In *French* v. *Old South Soc.,* 106 Mass. 479, where a pew was sold on condition that the grantee and his representatives should pay a tax assessed on the pew, and if they should leave the meeting-house they would offer the pew to the grantor, the court held that the condition in the conveyance was not void for remoteness. In *Tobey* v. *Moore,* 130 Mass. 448, and *Hunt* v. *Wright,* 47 N. H. 396, [93 Am. Dec. 451], it is held, by way of *dicta,* however, that conditions are not within the rule against perpetuities. In *Giles* v. *Boston Society,* 10 Allen (Mass.), 355, where the property was given on condition that the grantee should keep testator's tomb in repair, the court held that no breach of the condition had been shown, but expressed the opinion that if there had been a breach such condition would not be void for re-

moteness; and further said that conditions generally are exempt from the operation of the rule against perpetuities. In *Canal Co.* v. *Methodist Rel. Soc.*, 13 Met. (Mass.) 335, *Sharon I. Co.* v. *Erie*, 41 Pa. St. 341, *Indian O. Co.* v. *Sikes*, 8 Gray (Mass.), 562, and *Lawe* v. *Hyde*, 39 Wis. 345, the question of remoteness was raised and argued by counsel, but the courts disregarded the point and rendered decisions upholding the conditions.      In *Wakefield* v. *Van Tassell*, 202 Ill. 41, [95 Am. St. Rep. 207, 65 L. R. A. 511, 66 N. E. 830], involving a forfeiture of title on breach of building condition, the court says: ''Nor do we think the contention of counsel for appellants that the condition violates the spirit of the rule of perpetuities can be sustained. In *Gray* v. *Chicago etc. R. Co.*, 189 Ill. 400, [59 N. E. 950], where one of the conditions of the deed in question was that appellee should maintain a passenger depot at a certain place and stop thereat all its accommodation trains to take and leave passengers, it was contended by appellee that the condition, being perpetual, was illegal and void, and that the appellee held the land free from such invalid condition, but this contention we refuse to uphold; and we think that case decisive of the one at bar as to appellants' objection that the condition violates the spirit of the rule of perpetuities.''      *Brattle Square Church* v. *Grant*, 3 Gray (Mass.), 142, [63 Am. Dec. 725], *Hopkins* v. *Grimshaw*, 165 U. S. 342, [41 L. Ed. 739, 17 Sup. Ct. Rep. 401, see, also, Rose's U. S. Notes], *First Universalist Soc.* v. *Boland*, 155 Mass. 177, [15 L. R. A. 231, 29 N. E. 524], are to similar effect. There are other decisions where the rule against perpetuities is referred to, and, as has been pointed out, numerous cases where conditional reservations of this kind are involved and upheld; but in no instance to which our attention has been called has the rule against perpetuities or remoteness been applied by our domestic courts against this class of cases.      (See *Johnson* v. *Hulings*, 49 Am. St. Rep. 135.)      [1]   In determining the doctrines of the common law, we may properly look to the decisions of the courts of the United States, as well as to those of England, for their interpretation.

It may be conceded that the state of the law in this country, as thus pointed out, is not conclusive or even authoritative against respondent's contention; but it suggests a very

tangible ground for doubting its soundness. It is true that the common-law rules governing real estate titles prevail in this state so far as not repugnant to or inconsistent with the constitution or laws of this state. (Pol. Code, sec. 4468.) But for the very purpose of avoiding the subtleties and technicalities of the common law as to real property, there has been enacted into our Civil Code what appears to be intended as a complete scheme or system on the subject. (*Blakeman* v. *Miller,* 136 Cal. 138, [89 Am. St. Rep. 120, 68 Pac. 587].) It ought not, therefore, to be the policy of the courts to tack on any restrictions in the free control and disposal of real property by contract or conveyance not inconsistent with the provisions of the code on that subject. Sections 715, 716, and 717 of the Civil Code state the limitations upon the power of suspension of alienation. There is no express statement of the rule against perpetuities. Counsel for respondent rely upon sections 772–778 of the Civil Code to supply the rule as invoked on this appeal. These sections apply to future estates in remainder (section 769), created and limited by deed or devise upon a precedent estate. We question if any of these contemplates or includes the reservation by a grantor of a reversion of the estate to himself or his heirs in case of condition broken. For instance, the nearest thing to it is under section 778, which provides that "a remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate; and every such remainder is to be deemed a conditional limitation." In the present case, if the remainder of the estate, after forfeiture of the precedent estate by condition broken, was to vest in a third person, this would be an attempt to create a conditional limitation, and, under our statute and under the decisions in *Brattle Square Church* v. *Grant, supra,* and *Hopkins* v. *Grimshaw, supra,* might be within the rule against perpetuities. Under the deed in question here there is no attempt to create a contingent estate in a third party, but there is a reservation in the deed itself of a conditional reversion of the title to the grantor, his heirs or assigns.

As is said in *Parker* v. *Nightingale,* 6 Allen (Mass.), 341, [83 Am. Dec. 632, 635]: "By the deed under which the defendants claim title the entire and absolute interest in the estate did not pass to the grantee. The restriction on the use

of the premises operated as a qualification of the fee, and was in the nature of a reservation or exception out of the estate granted. Thus there was an interest or right created by the deed itself.''

[2] The estate reserved under the deed here is in the nature of a reversion. (Civ. Code, sec. 768.) "The right which a conditional grantor of an estate has to regain the estate upon a breach of the condition is a present and vested interest of the nature of a reversion." (Washburn on Real Property, 6th ed., sec. 968.) The same author says (section 969): "Nor is the right to re-enter for condition broken subject to any objection on the ground of its coming within the limitation of a perpetuity which the law does not allow, although it may not take effect by the event which is to defeat the estate to which the condition is annexed within the period of time beyond which an estate may not be originally limited to take effect." In *Johnston* v. *City of Los Angeles, supra,* it is held that such an interest is a contingent interest, and not the mere possibility of a future right, and, therefore, is a species of property capable of passing by transfer, under sections 699 and 1046 of the Civil Code. All reversions are vested interests. (Gray on Rule on Perpetuities, 2d ed., sec. 113; 30 Cyc. 1473.) Vested interests are not within the rule against perpetuities. (Gray on Rule on Perpetuities, secs. 99, 205; 30 Cyc. 1422, 1473.)

We recognize the distinction which counsel for respondent have so clearly pointed out between a perpetuity resulting from suspension of the power of alienation and remoteness of time for the vesting of estates, as contemplated by the rule against perpetuities, as well as the confusion that has resulted in the decisions by failure to distinguish between the two doctrines. It may be said, nevertheless, that fundamentally the object of both rules is to prevent perpetuities, the tieing up of estates and the suspension of their free and full conveyance for long and indefinite periods of time, by directly suspending the power to alienate, in the one instance, and by holding up the investure of a future estate in real property in the other. (21 R. C. L. 288; *Barnum* v. *Barnum*, 26 Md. 119, [90 Am. Dec. 88]; *Gates* v. *Seibert*, 157 Mo. 254, [57 S. W. 1065]; *Hunt* v. *Wright*, 47 N. H. 396, [93 Am. Dec. 451].) If the reservation of a condi-

tional future estate by such limitations in a deed as here are involved operated as a sequestration of such future interest, with no vested right in any person in being capable of conveying it, it might well be claimed that the spirit of the rule against prepetuities was violated. But in this state, at least under our code and the decisions of our courts, such is not the case. (Civ. Code, sec. 1046; *Johnston* v. *City of Los Angeles, supra.*)

There may be strong grounds in public policy against arbitrarily limiting and restricting the manner of use of real property for indefinite periods which may extend far beyond the existing conditions which make such limitations reasonable and justifiable when created; but our courts have held that such limitations are not void as against public policy so long as there are parties in being capable of passing a complete and unlimited title, and not obnoxious to the rule against suspending the power of alienation. [3] For the reasons stated, and without reviewing or, perhaps, comprehending all the nice distinctions of the common law suggested by the decisions cited in the able and exhaustive review of the subject by all parties here, we conclude that the conditional forfeiture reserved in this deed is not void for remoteness.

It is further suggested by appellant that, if the conditions in this deed were insufficient to divest respondent's title, they at least create covenants or reservations which give rise to equitable rights that would defeat respondent's claim to have his title quieted. In view of the conclusions already reached, we will not go further into this question than to say that this contention seems to find support in the authorities on the theory that the conditions of the deeds are reservations in the nature of easements or servitudes for the benefit of the remaining lands of the grantor. (*Whitney* v. *Union Ry. Co.*, 11 Gray (Mass.), 359, [71 Am. Dec. 715]; *Parker* v. *Nightingale, supra; Evans* v. *Foss,* 194 Mass. 513, [11 Ann. Cas. 171, 9 L. R. A. (N. S.) 1039, 80 N. E. 587]; *Dawson* v. *Western Co.*, 107 Md. 70, [126 Am. St. Rep. 337, 15 Ann. Cas. 678, 14 L. R. A. (N. S.) 809, 68 Atl. 301].)

In further support of the judgment respondent calls attention to the stipulation of facts on which the case was tried, wherein it is admitted that the character of the prop-

erty has changed since the creation of the conditions and conveyance by appellant, so that it has become more valuable for business purposes than for residence purposes, and argues that under such changed conditions equity will not enforce a covenant or condition for forfeiture of title. No authorities are cited by respondent in support of this contention. [4] The doctrine that equity will not enforce restrictions on the use of property, we think, only applies to cases where it is sought to enforce such restrictions by equitable proceedings, where the reason and justification for them has failed through changed conditions. In other words, under such circumstances a court of equity may deny the relief sought. But the rule does not go to the extent of permitting parties whose land is subject to the legal restraint of such limitations to bring action to quiet their title against such contractual obligations, because of changed conditions. Contractual obligations do not disappear as circumstances change. It is only the granting of equitable relief, and not the binding force of the restrictive covenant, that is affected by a change in the conditions. "A change of circumstances cannot be considered on a petition at law to ascertain the limits of a restriction in a deed as equitable grounds for not enforcing it"; and "the covenant will not for that reason, and in advance of a breach, be declared a nullity in a suit instituted by the covenantor." (*Brown* v. *Huber,* 28 L. R. A. (N. S.) 707, and note; *Welch* v. *Austin,* 187 Mass. 256, [68 L. R. A. 189, 72 N. E. 972]; *Coudert* v. *Sayre,* 46 N. J. Eq. 386, [19 Atl. 190]; *Kountze* v. *Helmuth,* 67 Hun, 343, [22 N. Y. Supp. 204].) [5] The mere fact that the property has become more desirable or valuable for business than for residence purposes, where the restriction, notwithstanding the change of conditions, still is of substantial advantage to the dominant property, will not necessarily defeat application for equitable relief. (*Pagenstecher* v. *Carlson,* 146 App. Div. 738, [131 N. Y. Supp. 413]; *Landell* v. *Hamilton,* 175 Pa. St. 327, [34 L. R. A. 227, 34 Atl. 663]; *Spahr* v. *Cape,* 143 Mo. App. 114, [122 S. W. 379].)

As there has been no breach of the conditions here, and no attempt to enjoin such a breach or to enforce a forfeiture, we think it premature, at least, to determine the equities of

the parties as they might exist at some future time in the event of such breach.

The judgment is reversed.

Finlayson, P. J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1920.

All the Justices concurred.