[L. A. No. 8555. In Bank.—July 2, 1927.]

W. A. STRONG, GEORGE C. ALBERT (Substituted), Appellant, v. G. ALLAN HANCOCK et al., Respondents; CLARA R. SHATTO, Cross-Complainant; GEORGE C. ALBERT, Cross-Defendant and Appellant.

[1] BUILDING RESTRICTIONS—RESTRICTIONS ON USE OF LAND—ACTION TO QUIET TITLE—ISSUES—REMEDIES.—In an action by the owner of a lot in a certain tract of land to quiet his title as against certain restrictions and conditions subsequent contained in the deed to the land, providing, among other things, that the premises were to be used for residence purposes only, and not for business, prescribing the character and minimum value of the buildings to be erected thereon, and that no oil well should be drilled upon the property or machines therefor placed thereon, and containing the conditions subsequent that a breach of the conditions and restrictions should work a forfeiture of the grant and cause a reversion to the grantor, her heirs, successors, and assigns, where the trial court found in accordance with the cross-complaint of the original owner of the tract and grantor in the deed in question that the restrictions and conditions were legal, valid, and enforceable, and that the ownership of the lots in the tract was subject thereto, that the changed conditions in or about the property did not make it inequitable to enforce the restrictions and conditions, and that plaintiff had violated the conditions and restrictions and the cross-complainant was entitled to an interlocutory decree that plaintiff's title be forfeited unless a certain structure which violated the restrictions be removed in a certain time, it was unnecessary to determine what plaintiff's remedies might have been had the conclusion been arrived at that the cross-plaintiff was not entitled to the relief which the trial court awarded her.

[2] ID.—DEVIATION FROM RESTRICTIONS—PERMISSION FOR RAILWAY.—The fact that the owner of a tract of land, in making certain conveyances subsequent to the laying out of the land as a restricted residential district, departed from uniformity in the restrictions by granting permission to operate an electric railway through the tract, over and subways under, the particular lots so conveyed, and ‘the right to provide a proper station and access to such railway, will not be held to have injuriously affected lots subsequently acquired under a deed containing the general restrictions, in the absence of any showing that the construction and operation of the railway or the station and approaches thereto would render the lots less desirable or available for ‘restricted residential uses to which they were confined by the deed.

[3] ID.—VEHICULAR TRAVEL ON BOULEVARDS AND AVENUES—EFFECT ON RESTRICTIVE RESIDENTIAL DISTRICT.—It cannot be held that vehicular traffic and travel over broad boulevards and avenues which lead from a city to the sea have by their increasing volume destroyed restricted residential uses of property along their route so as to abrogate the restrictions contained in the deed of conveyance.

[4] ID.—VARIATIONS IN RESTRICTIONS AS TO TIME.—The fact that the restrictions in the deeds to some of the lots of a tract laid out and sold for residential purposes are limited to a certain period of years, while the same restrictions in other deeds are unlimited as to time, cannot be complained of until the expiration of the limited period, the restrictions being uniform in their operations in the meantime.

[5] ID.—CHANGE IN NEIGHBORHOOD—DESIRABILITY FOR RESIDENCE.—Where the trial court found in such case that whatever changes had occurred in the uses of the property adjacent to the restricted tract had not affected the availability, desirability, or value of any or all of the lots within the tract for such restricted residential uses as were contemplated in the deed to the original grantees, the court properly held that it was not inequitable to‘ enforce such restrictions against the present owner of said lots.

[6] ID. — EVIDENCE — ZONING ORDINANCE.—In such a case, even if a zoning ordinance covering property in the neighborhood of and partly within the restricted tract was admissible in evidence to · show that changed conditions in the neighborhood would render the application of the ordinance advisable, the exclusion of such ordinance from evidence would not be prejudicial error where there

2.  See 9 Cal. Jur. 367.

5.  Right to enforcement of restrictions as affected by change in neighborhood, note, 28 L. R. A. (N. S.) 707.

was abundant direct evidence with respect to the actual conditions and changes in condition which had taken place in the neighborhood covered by the restrictions.

(1) 4 **C. J.**, p. 649, n. 35.   (2) 18 **C. J.**, p. 395, n. 31.   (3) 18 **C. J.**, p. 400, n. 85; 23 **C. J.**, p. 87, n. 68.   (5) 4 **C. J.**, p. 796, n. 15; 18 **C. J.**, p. 394, n. 18, p. 401, n. 89 New.   (6) 4 **C. J.**, p. 1010, n. 7.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles S. Burnell, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Bradner W. Lee, Bradner W. Lee, Jr., Kenyon F. Lee and Loeb, Walker & Loeb for Appellant.

Stephens & Stephens, Schenck & Silverstein, Lovett & Hervey, Frank Karr, S. F. McFarlane, B. Rey Schauer, Anderson & Anderson, Victor E. Shaw & McDaniel, Leroy M. Edwards and John L. Dyer for Respondents.

Maurice E. Harrison, *Amicus Curiae.*

THE COURT.—The following opinion, prepared by Mr. Justice Richards, is hereby adopted as the opinion of the court:

This action was originally instituted by W. A. Strong, the owner of a certain lot in a certain tract of land known as "Shatto Place" in the city of Los Angeles, against one Clara E. Shatto, the original owner of the entire tract and grantor of said specific lot to a predecessor of said plaintiff, the object of said action being that of having the title of said plaintiff to said lot quieted as against certain restrictions and conditions subsequent contained in said deed to the plaintiff's said predecessor.   The plaintiff in his first amended complaint set forth specifically the restrictions contained in said deed, which were, in brief, that the premises conveyed were to be used for residence purposes only and that no part thereof was to be used for business purposes or for any structure whatever other than one first-class private residence of at least two stories in height, with the customary outbuildings, such residence to cost and be fairly worth not less than $10,000, and to occupy a certain place upon

the premises with reference to the front line thereof; that no oil well should ever be drilled upon the property nor any derrick, machinery, or appliances for such drilling ever be erected thereon. Certain other restrictions not necessary to be herein related were embraced in said deed. The conditions subsequent contained therein were to the effect that a breach of the conditions and restrictions of said deed should work a forfeiture of said grant and cause said premises to revert to the grantor, her heirs, successors, and assigns. The plaintiff proceeded to set forth that the original grantee of said deed subjected said premises to a trust deed to secure a certain indebtedness and that having defaulted in the payment of which, said premises were sold under the terms of said trust deed and were purchased by the plaintiff at such trustee's sale; and that said plaintiff thereby became the owner in fee simple of the premises free and clear of the restrictions subsequent contained in said original conveyance, notwithstanding which the said defendant asserts and claims that said restrictions and conditions are still in full force and effect and threatens that in case the plaintiff shall fail to comply with the same or shall cause or permit any breach thereof she will declare a forfeiture of the said plaintiff's title to said premises and will remove the plaintiff therefrom; that said claim constitutes a cloud upon the plaintiff's title which he prays the court to remove by its judgment declaring that said claims are void, and decreeing that the said defendant be enjoined from further asserting the same. The defendant in her answer to said amended complaint denied those averments thereof that her aforesaid claims were void or that she had no interest in said premises arising out of the provisions of her said deed to the plaintiff's predecessor; and for a further defense and as a cross-complaint she reasserted the making of said deed to plaintiff's predecessor and the covenants, restrictions, and conditions therein contained. She further alleged that she had from time to time made similar conveyances to divers persons of other lots in said Shatto Place tract containing provisions similar to those contained in her said deed to plaintiff's predecessor, and upon which many costly residences had been erected by her grantees; that said defendant still remained the owner of a number of lots

in said tract and that both she and her grantees had, by virtue of such grants and holdings, the interest or easement respectively created in and still affecting the plaintiff's said premises; wherefore she prayed the decree of the court that said restrictions, covenants, and conditions subsequent, as set forth and contained in her deed to plaintiff's predecessor of said premises, constitute covenants binding upon said plaintiff as the present owner of said premises and that the defendant be declared entitled to have the plaintiff's said premises used for the purposes set forth in said covenants and conditions and for no other purpose; and for general relief.

It may clarify the issues presented to the trial court upon the first and second trials of said cause to define the area, location, and boundaries of Shatto Place tract. The tract embraces about 35 acres of land, lying in the westerly portion of the city of Los Angeles and bounded by Wilshire Boulevard, Vermont Avenue, Fourth Street, and Westmoreland Avenue. In the course of its subdivision it was intersected by Sixth Street, and also in part by Fifth Street, each running westerly, and had laid out through its center, running northerly and southerly, an avenue known as Shatto Place. It was subdivided by its owner, Clara R. Shatto, in about the year 1904 and was laid out with the idea of forming an exceptionally high-class restricted residential district, and since its subdivision lots therein have been sold to various purchasers, who have improved the same by the erection of costly residences conforming to the conditions and restrictions contained in the conveyances of said lots. The region which lies contiguous to this tract and in its general neighborhood has also been largely subdivided, sold, and improved in the manner described by the trial court in its findings made and filed upon the first and subsequent trials of this cause.

The cause proceeded to its first trial before the court on or about the seventh day of June, 1916, upon the issues as thus framed, and, being submitted, the court filed presently its findings of fact and conclusions of law, wherein it recited that the facts set forth in plaintiff's amended complaint with relation to his source of title to the premises in question were true, and referred in general terms to the restrictions, covenants, and conditions contained in the origi-

nal deed thereto. The court also found that the averments in the defendant's answer respecting her conveyances to divers persons of other lots in said Shatto Place tract and to the erecting by her grantees of costly structures thereon were true. The trial court then proceeded to make certain other specific findings touching matters which it becomes important to consider on account of the future history of the cause; and which further findings are as follows:

"That when said tract known as Shatto Place was platted and laid out for sale, and the map thereof filed for record, to-wit, Dec. 8, 1904, there were then no flats, hotels, apartment houses, stores or other places of business or business houses in the immediate vicinity thereof; that there were no street car lines running to or through said Shatto Place, and no paved streets therein or bounding same; that since said December 8, 1904, there have been constructed two separate double track street railway lines now belonging to the Los Angeles Railway Company (which company is a passenger carrying public utility corporation covering practically the whole city of Los Angeles with passenger car service), serving said Shatto Place Tract as well as other parts of said city, one of said lines running through said tract in an east and west direction on 6th street, which was constructed prior to September 5, 1912, and the other running in a north and south direction on Vermont avenue, which avenue is the west boundary of said tract; franchise for which was issued prior to September 5, 1912, but same was constructed after said date; that on said double tracks at least three separate lines of cars are operated; that the intersection of said 6th street and Vermont avenue is a transfer point for all of said lines with cars passing said point on an average of once every minute during the day and a large portion of the night; that the said intersection has become and is now a noisy and a much traveled place; that since December, 1904, many of the streets in said tract and in the immediate vicinity thereof have been paved with asphalt or other like material, including both said 6th street and Vermont avenue and Wilshire Boulevard; that between December, 1904, and September 5th, 1912, a three-story, with basement, apartment house was built on Virgil avenue, between Wilshire boulevard and 6th street, about three and one-half blocks from the corner of 6th street and Vermont

avenue, but only one and one-half blocks easterly of the
east boundary of said Shatto Place Tract; and that several
flats were built on both the east and west side of Westmore-
land avenue between 6th street and Wilshire boulevard,
about two and one-half blocks from said corner, but that the
property on the west side of Westmoreland avenue in said
block abuts in the rear upon the east line of said Shatto
Place Tract; that several stores and apartment houses have
been built in the vicinity of 10th street and Vermont ave-
nue, about seven blocks southerly from said corner of 6th
street and Vermont avenue; that all of said flats, apartment
houses and stores are now in use as such and have been so
used ever since their erection.

"That since September 5, 1912, another flat has been built
and is now occupied as such, on Westmoreland avenue, be-
tween 6th street and Wilshire boulevard, and a large store
building has been erected at 9th street and Vermont avenue,
and within six blocks of the property in suit, and there are
now in the course of construction three flat buildings at the
corner of 7th street and Vermont avenue, about 1200 feet
southerly from the property in suit; that a place of business
known as a gasoline station, being a light frame building
about 14 by 20 feet in size, has been constructed and is now,
and for a long time past has been, in use as such, on the
south side of Wilshire boulevard immediately opposite said
Shatto Place Tract, and at a point about twenty feet west of
the point where the principal street of said tract, to-wit:
Shatto Place street, would intersect the south line of Wil-
shire boulevard if said Shatto Place street were prolonged
across Wilshire boulevard; that Wilshire boulevard is the
south boundary of Shatto Place Tract, and that a line mid-
way between Shatto Place street and Westmoreland avenue
is the eastern boundary of said tract; that the property
described in the amended complaint herein is situated at the
southeast corner of 6th street and Vermont avenue, fronting
100 feet on Vermont avenue and 217 feet on 6th street; that
on the northwest corner of said 6th street and Vermont
avenue there has been erected a place of business known as
a gasoline station, where gasoline, coal oil and like products,
including lubricating oils and greases, are sold and kept in
stock for sale; that said building is about 14 by 20 feet in
size, and of light frame construction, and sets back about

12 feet from the streets; that said place of business is now in operation and has been for about two years; that the property on the west side of Vermont avenue north of 6th street up to 5th street is free from all restraints, conditions or restrictions concerning the use and occupation thereof; that the property on the west side of Vermont avenue in the block between 6th street and Wilshire boulevard is limited, restricted and conditioned in its use and occupation by terms and conditions subsequent contained in various deeds of grant to the said property made at about the time the said Shatto Place Tract was laid out, which said restrictions and conditions subsequent are identical with the conditions subsequent contained in the deed as alleged in the pleadings herein, except that the restrictions and conditions subsequent to the said property on the west side of Vermont avenue expire and become ineffective for any purpose by direct stipulation and provision contained in the said deeds creating said conditions subsequent on and after January 1, 1920.

"That said Vermont avenue is one of the main north and south thoroughfares of the western portion of the city of Los Angeles, and extends from the foothills on the north of said city to the ocean front at San Pedro, a distance upwards of thirty miles; that said 6th street is one of the main east and west thoroughfares of said city extending from the eastern city limits to the western city limits, a distance of upwards of ten miles; that both of said streets are extensively traveled throughout their whole lengths."

Upon the foregoing findings of fact the trial court made and filed its conclusions of law: (1) That the plaintiff was the owner in fee simple absolute of the premises described in his amended complaint; (2) That the defendant Clara Shatto had no right, title, or interest whatever in said premises by reason of the conditions and covenants set forth in said amended complaint and also in her answer thereto; (3) That said covenants and conditions subsequent are void and of no effect; (4) That said plaintiff is entitled to a decree of said court to that effect and relieving his said property from the cloud thereof, and that the said defendant be debarred, enjoined, and prohibited from asserting or causing to be asserted any title, claim, interest, or right of forfeiture on account of said covenants or conditions subsequent or of

any breach thereof. Judgment was accordingly made and entered by said court on or about September 19, 1916. The defendant took and prosecuted an appeal from such judgment to the supreme court which in due course transferred said cause for hearing and determination to the district court of appeal in and for the second appellate district, division two, and said cause was thereafter heard and decided by said appellate tribunal upon said appeal. (*Strong* v. *Shatto,* 45 Cal. App. 29 [187 Pac. 159].) In its decision the appellate court gave its consideration to two main questions as being presented upon said appeal. The first of these was the contention urged by the plaintiff and respondent in the case that the conditions subsequent contained in the defendant and appellant's deed to his predecessor were void as violative of the statutes against perpetuities. The appellate court held against this contention and the correctness of its ruling in that regard is not brought in question upon the instant appeal. The second question to which the said court gave consideration was as to whether the plaintiff had sufficiently shown that the character of the property involved and of the tract affected by said restrictions and conditions subsequent and of the region had been so far changed since the creation of the restrictions and conditions contained in the appellant's deed to plaintiff's predecessor that the same has become more valuable for business than for residence purposes to such a degree as that a court of equity would no longer enforce a covenant or condition for forfeiture of title. Upon this branch of the case the court held (1) that the authorities seemed to support the appellant's contention that the conditions in the deeds to the properties in question were reservations in the nature of easements or servitudes for the benefit of the remaining lands of the grantor; citing *Whitney* v. *Union Ry. Co.,* 11 Gray (Mass.), 359 [71 Am. Dec. 715]; *Parker* v. *Nightingale,* 6 Allen (Mass.), 341 [83 Am. Dec. 632]; *Evans* v. *Foss,* 194 Mass. 513 [11 Ann. Cas. 171, 9 L. R. A. (N. S.) 1039, 80 N. E. 587]; *Dawson* v. *Western Co.,* 107 Md. 70 [126 Am. St. Rep. 337, 14 L. R. A. (N. S.) 809, 68 Atl. 301]; and (2) that the doctrine that equity will not enforce restrictions on the use of property only applies to cases where it is sought to enforce such restrictions when the reason and justification for them has failed through

changed conditions; but that the rule does not go to the
extent of permitting parties whose land is subject to the
legal restraint of such limitations to bring an action to quiet
their title against such contractual obligations because of
changed conditions. Contractual obligations do not dis-
appear as circumstances change. It is only the granting of
equitable relief and not the binding force of the restrictive
covenant that is affected by a change in the conditions; cit-
ing *Brown* v. *Huber,* 80 Ohio St. 183, 28 L. R. A. (N. S.)
707, and note [88 N. E. 322]; *Welch* v. *Austin,* 187 Mass.
256 [68 L. R. A. 189, 72 N. E. 972]; *Coudert* v. *Sayre,* 46
N. J. Eq. 386 [19 Atl. 190]; *Kountze* v. *Helmuth,* 67 Hun,
343 [22 N. Y. Supp. 204]; (3) that the mere fact that
property has become more desirable or valuable for busi-
ness than for residence purposes where the restrictions,
notwithstanding the change in conditions, still are of sub-
stantial benefit to the dominant estate will not necessarily
defeat application for equitable relief; citing *Pagenstecher*
v. *Carlson,* 146 App. Div. 738 [131 N. Y. Supp. 413]; *Lan-
dell* v. *Hamilton,* 175 Pa. St. 327 [41 L. R. A. 227, 34 Atl.
663]; *Spahr* v. *Cape,* 143 Mo. App. 114 [122 S. W. 379].
The appellate court accordingly reversed the judgment of
the trial court upon said first appeal; and a petition for
hearing having been presented and denied in this court the
cause was returned to the superior court for further trial.

Thereupon, one George G. Albert, who had acquired the
interest of the plaintiff Strong in the lot in said tract in-
volved in the action as originally brought, and who had also
acquired the interests of certain other grantees of the de-
fendant Shatto in certain adjoining lots, and who had been
substituted for the plaintiff Strong by order of court, filed,
by leave of the court, a supplemental complaint wherein he
joined as co-defendants with said defendant Shatto in said
action the owners, individual and corporate, of all of the lots
in said tract who held the same immediately or mediately
under deeds from said defendant Shatto containing similar
covenants, restrictions, and conditions subsequent to those
embraced in the deed to Strong and also to the other persons
to whose interests in those certain lots in said tract the said
substituted plaintiff had succeeded. In his said supple-
mental complaint said substituted plaintiff again set forth
specifically the restrictions contained in the original deed

to his predecessor and also, with certain exceptions, in the
original deeds of the added parties to the action. He,
however, averred upon information and belief that the origi-
nal grantor of the lots in said tract had made conveyances
of lots therein upon other conditions, restrictions, and reser-
vations than those generally employed in her transfers; and,
also, that she had sold lots therein without any conditions,
restrictions, or reservations being imposed thereon. In his
supplemental complaint the substituted plaintiff also pro-
ceeded to set forth with much of detail, following in many
respects the findings of the court upon the former trial, the
changes in character as to being residential, business, or
semi-business districts of the region surrounding, adjacent
to, and in the vicinity of the Shatto Place tract since its
original subdivision, including also in his averments certain
further changes therein which were alleged to have occurred
since the former trial. He also alleged that the said origi-
nal grantor of said tract had given certain grants and per-
missions to certain electric railway corporations to construct
and operate electric railroads upon certain surface or sub-
surface roadways within and across said tract, including the
right to erect and maintain a station thereon for access to
such railways. He also proceeded to allege that subsequent
to the creation of said tract as a restricted residential area
the city of Los Angeles had adopted certain zoning ordi-
nances creating five zones consisting of various districts and
prescribing the classes of buildings, structures, and improve-
ments which were to be permitted therein respectively, that
said Shatto Place was partly within and partly without
two of said zones; that the plaintiff's said lots are embraced
within the area of "C" zone as defined by said ordinance,
and that by the terms thereof, upon the lots within said
zone no buildings or structures are to be erected or used
for other than certain classes of business as specified in said
ordinance and set forth in said complaint; that by the terms
of said zoning ordinance within the area embraced in "B"
zone as described therein only such buildings, structures, or
improvements are to be erected, constructed, or used therein
as are to be occupied as dwellings, tenements, hotels, lodg-
ing or boarding houses, churches, clubs, educational or
eleemosynary institutions, etc. The plaintiff alleges that by
the adoption of said zoning ordinance the changed condi-

tions affecting said Shatto Place and the lots therein have
been so recognized and established by law as to destroy the
previous restrictions, reservations, and conditions imposed
by the original grantor thereon and as to render him en-
titled to have the cloud of such restrictions removed from
his said property; and also as to entitle the trial court to
render a declaratory judgment affecting all of the lots and
property owners within said tract. Wherefore the said
plaintiff prays for such relief.

The aforesaid supplemental complaint with the process
issued thereon was served upon all of the parties to said
action named or added as defendants therein. Certain of
said defendants failed to appear and answer said supple-
mental complaint and in due course their and each of their
defaults were entered in accordance with law. Others of
the said defendants thereafter appeared and answered said
supplemental complaint. Some of these joined with the
said substituted plaintiff in asking for the same relief.
Others of said defendants also answered, denying in vary-
ing responses the essential averments of said supplemental
complaint and asking that said restrictions, reservations, and
conditions subsequent be maintained and enforced. Among
these was the original defendant Clara R. Shatto, who, in
addition to the denials in her answer, presented a cross-com-
plaint against said plaintiff, wherein the averments of her
said answer were affirmatively set forth and wherein also
she averred that said substituted plaintiff had violated the
terms, covenants, and conditions subsequent of the original
deed to his predecessor by the erection of an oil station upon
one of his said lots, which said cross-plaintiff prayed should
be ordered removed, with the alternative that if not so re-
moved the right, title, and interest of said plaintiff be de-
clared forfeited to said cross-plaintiff by reason of such
violation. The substituted plaintiff answered said cross-
complaint denying the material averments thereof; and also
answered the affirmative matter set forth in the answers of
certain other of said defendants who had united with said
original defendant Clara R. Shatto in asking that the restric-
tions, covenants, and conditions subsequent contained in the
original deed to plaintiff's predecessor be maintained. The
answer and cross-complaint of Clara R. Shatto, as well as
the said answers of her co-defendants who did answer the

said substituted complaint, were not served upon the defendants who had defaulted, nor was the answer of said substituted plaintiff to said answer and cross-complaint of Clara R. Shatto and to the said answers of her several codefendants served upon said defaulting defendants. The objection of the latter to the absence of service upon them of the foregoing pleadings, filed after their defaults for not appearing to the substituted plaintiff's supplemental complaint, has been made the subject of another and independent appeal. The cause went to trial for a second time upon the issues as thus reframed and after a prolonged hearing was again submitted to the trial court for its decision. The court thereupon filed its findings of fact and conclusions of law therein. [1] In so doing the trial court did not apparently deem it necessary to deal with the question as to whether the substituted plaintiff had, by the additional matters set forth in his supplemental complaint or by the inclusion in said action thereby of all the owners of property within the area of Shatto Place, taken himself or the action outside of the principle announced upon the former appeal to the effect that an owner of a portion of an area affected by restrictions, reservations, and conditions subsequent, similar to those embraced in the original deeds to the lots in Shatto Place, could not maintain an action to quiet his title as against covenants of his predecessor in accepting such deed. Neither did the trial court apparently deem it necessary to consider the question as to whether the substituted plaintiff was entitled to seek a declaratory judgment against parties and in an action such as were embraced in his supplemental complaint. It would seem that the reason why the trial court did not rest its decision upon either of these issues is to be found in the fact that the original defendant Clara R. Shatto had presented to said supplemental complaint an answer and cross-complaint upon which, if the facts so warranted, she would be entitled to affirmative equitable relief, rendering it unnecessary, in view of its findings and conclusions in that regard, to determine what remedies the said substituted plaintiff would have been entitled to had the court arrived at another conclusion upon the facts and law of the case. We think the trial court correct in this regard, and in view of the conclusions as to the issues in the case presented by the said defendant's

cross-complaint, we do not find it necessary to consider what the said plaintiff's remedies might have been had we arrived at the conclusion that the cross-plaintiff was not entitled to the relief which the trial court accorded her. We have thus dealt with this subject for the reason that a brief has been filed by certain counsel as *amicus curiae* herein urging that this is in form a proper action calling for a declaratory judgment under the provisions of sections 1060–1062 of the Code of Civil Procedure.

The trial court in its aforesaid findings of fact found that the averments of the supplemental complaint were true as to the derivation of the substituted plaintiff's title to the lots in the Shatto Place of which he declared himself to have become the owner from certain original grantees of the defendant Clara R. Shatto; and also found that the deeds of the latter to the substituted plaintiff's respective predecessors contained the restrictions, covenants, and conditions subsequent set forth in said supplemental complaint. In this connection the trial court further found that by the terms of said deeds ''the said conditions are and shall be covenants running with the land for the benefit of the grantor herein, and for the benefit of each and all of said lots in said tract and of the owners of said lots and their respective successors in interest.'' The trial court further found that the title of said plaintiff is and at all times has been subject to the interest and estate therein of defendant and cross-complainant Clara R. Shatto, which interest and estate is in the nature of a reversion, to wit, a right of re-entry for condition broken; and is subject also to the easement imposed upon said property by virtue of the provisions, conditions, and restrictions contained in the deeds in the pleadings herein referred to, which easement inures to the benefit of each and every other lot in said Shatto Place. It may be said in passing that in so finding the trial court was but following the interpretation of said deeds and of the restrictions, covenants, and conditions subsequent contained therein which had been placed upon them by the decision of the appellate court upon the former appeal, the substance of which has been above set forth. The trial court further found that the allegations of the supplemental complaint as to the changes in uses which had taken place in the areas surrounding and adjacent to Shatto Place were

true, except that it was not true that "the change in uses to which the land surrounding and adjacent to Shatto Place has been put has been complete; nor is it true that any of said changes in uses of property have taken place within the said Shatto Place; nor is it true that any of said changes of use of property have made the property within Shatto Place or any of the lots contained therein wholly unadapted or undesirable for residential purposes. And in this connection the court finds that the changes in use of property outside of but adjacent to and in the vicinity of Shatto Place herein found to have taken place are the same sort and character of changes of use which the court found to have taken place in and by its written findings of fact filed herein upon the first trial of this cause, and that the difference in the said change of use and in the conditions affecting the property in the vicinity of the said Shatto Place is one of degree but not of kind." With respect to the averments of the supplemental complaint in support of the substituted plaintiff's claim that the defendant Clara R. Shatto, as the original grantor of lots in said tract, had imposed restrictions, conditions, or reservations upon some lots therein varying in character from those impressed upon the said plaintiff's property, the trial court found that: "It is not true that defendant Shatto has imposed any other conditions, restrictions or reservations upon any lot or lots in Shatto Place varying in character from the restrictions hereinabove referred to; nor is it true that said or any conditions, restrictions or reservations have been imposed without any general plan for the entire subdivision; nor is it true that any of said conditions, restrictions or reservations have expired by limitation of time or otherwise or at all; nor that any lot or lots within said tract have been sold, transferred or conveyed by defendant Shatto without any conditions or restrictions or reservations. But it is true that the said tract was laid out upon a general plan for the entire subdivision as a first-class residence tract, and the only variation in the conditions, restrictions or reservations upon which said lots were sold are those relating to the cost of houses to be erected on the corner lots and the inside lots and the character and cost of residence allowed in the low ground in Lot 19, of Block 4 of said tract, and also relating to the difference in the distances that residences are re-

quired to be set back from the street, as to lots upon different streets in said tract.'' With respect to the averments in said supplemental complaint as to the passage and content of certain zoning ordinances by the city of Los Angeles, the trial court made no findings for the reason that it had excluded the evidence thereof offered by the said plaintiff at the trial. Whether or not it was in error in so doing is presented upon another phase of this appeal. In addition to the foregoing findings negativing or modifying the averments of the substituted plaintiff's supplemental complaint the trial court expressly found that ''each and all of the allegations contained in the cross-complaint of the defendant Clara R. Shatto are true.'' In so doing the trial court found that the said substituted plaintiff, by the placing of an oil station upon one of his said lots affected by the foregoing restrictions, was engaged in violating the covenants, restrictions, and conditions subsequent of the deed in which his predecessor was the grantee of said lot, and was subject to the penalties of such violation. The court also found in favor of certain of the co-defendants of the said cross-complainant as to the truth of certain averments in their respective answers which accorded with the findings favorable to said cross-complainant upon her answer and cross-complaint. As conclusions of law based upon the foregoing findings of fact the trial court found that the covenants, reservations, restrictions, and conditions subsequent contained in said deeds were legal, valid, and enforceable; that the owner of each lot and parcel of land in said Shatto Place owns the same subject to said covenants, reservations, restrictions, and conditions subsequent; that the changed conditions in and about the property outside of said Shatto Place have not made and do not make it inequitable to enforce said covenants, reservations, restrictions, and conditions or any of them; that the plaintiff has violated and is violating said ''conditions, reservations, restrictions and covenants, and that the defendant and cross-complainant Clara R. Shatto is entitled to an interlocutory decree that the title of plaintiff in and to Lot 15, Block 2 of said Shatto Place be forfeited and that the same be revested in her, unless the structure maintained on said lot be removed within ten days after entry of said decree, and that if it be not so removed within said period then said Clara R. Shatto shall

be entitled to a final decree declaring plaintiff's title to said land forfeited and the whole title thereto revested in her.'' From the judgment of the court in accordance therewith the said plaintiff has prosecuted this appeal. The main issue litigated upon this appeal is as to whether certain changed conditions affecting the uses of property within the area of the Shatto Place have operated to abrogate the covenants, restrictions, and conditions subsequent in the deed of plaintiff's predecessor in title to the property described in his supplemental complaint; or if not entirely to abrogate these to at least render their enforcement inequitable; and also whether certain changed conditions in respect to the uses of property and in the movement of traffic in the near neighborhood of said tract operated and are operating to render it no longer equitable to enforce against said plaintiff and his said properties the burden and the penalties of said covenants, restrictions, and conditions subsequent. In presenting the foregoing phases of this main issue the appellant urges that the findings of fact of the trial court do not support its conclusions of law and its judgment based thereon; that the said findings of fact of the trial court are not supported by the evidence in the case; and that the trial court erred in the exclusion of certain evidence bearing materially upon the issues of fact presented by the pleadings in the cause. In support of the first phase of the foregoing contentions the appellant insists that the uncontradicted evidence in the case shows that the defendant Shatto in the making of certain conveyances subsequent to the laying out by her of Shatto Place as a restricted residential tract departed from the rule of uniformity in respect to the uses to which the properties therein to be conveyed should be put and also in respect to the length of time during which such restrictions, etc., upon such other properties were to be operative. The appellant refers specifically to four deeds, three of which were to Los Angeles Pacific Land Company, a corporation, and the other of which was to one Hazel Kibby. These deeds contain in addition to the restrictions, etc., found in the deed to plaintiff's predecessor two variations not contained therein. By one of these permission was expressly granted to operate an electric railway with tracks over and subways under the particular lots so conveyed, and also permission to said Pacific Land Com-

pany to provide a proper station and access to such railway. The other variation consisted in the provision that the restrictions, etc., contained in all of the grantor's deeds and which were otherwise to be perpetual should, in respect to these four particular conveyances, cease and terminate in the year 1955 and be of no further force and effect. The evidence educed upon the trial disclosed that these four deeds were made about three years prior to the conveyances of said plaintiff's lots to his predecessors in title; that the deed to said Pacific Land Company (which is in fact a corporation operating electric railways) covering a portion of block 19 in said tract conveyed to it lands lying in low ground formed by the valley of a little stream which ran across that portion of said tract, which lands had not been subdivided into residence lots but remained in one large tract apparently because not suited to residential uses. The said corporation planned to run a railway to the beach, the route of which would lie across Shatto Place and upon and along this particular low-lying plot of ground with subway approaches underlying certain other lots also granted to it and to said Hazel Kibby. It would, of course, be beneficial to said entire tract to have a station and means of access to such railway in case permission was given in these grants to construct the same and it would require no straining of reason to conclude that the construction and operation of such a railway with convenient station and approaches would be a benefit to said tract and to the subsequent purchasers of residential lots therein. Some such benefit might well have been contemplated by the original owner of said tract in the adoption of a general plan for the devotion thereof generally to restricted residential uses; and that some such purpose was in her contemplation at the time of the subdivision of said tract and of its devotion to such restricted uses seems to have been agreed to by the parties to this action in the course of the trial thereof by a stipulation wherein such general plan was conceded and wherein the specific portion of block 19 of said tract described as low-lying ground was specifically referred to. [2] It would thus seem that a variation in the otherwise uniform restrictive uses to which the lots generally in said tract were to be subjected which would permit these particular portions of said tract to be utilized for an electric railway ought not to be held to be

such a variation as would in any way injuriously affect the lots which the plaintiff's predecessors subsequently acquired, especially in the absence of any showing that the construction and operation of such railway or of the station and approaches thereto would render the plaintiff's said lots less desirable or available for the restricted residential uses to which by the terms of the deeds to his predecessors they were to be confined. No such showing was made or attempted on the part of the appellant. The only case which is cited by appellant's counsel as sustaining his contention that the construction and operation of a railway along or across a tract set apart to restricted residential uses would have the effect of abrogating such restrictions as to the other lots in said tract is the case of *Columbia College* v. *Thacher*, 87 N. Y. 311–317 [41 Am. Rep. 365]. In that case the court found that an elevated steam railway had been built and was being operated past the premises and that "not only large depreciations in rents, when occupied, but also frequent vacancies have followed the construction of the road"; and further found "that the construction of this road and its management have rendered privacy and quiet in the adjacent buildings impossible and so affected the premises of the defendant and all those . . . who, with the plaintiff entered into the covenant that neither their better improvement nor permanent value can be promoted by enforcing its observance." The conclusion of the court upon appeal in that case is well founded upon the foregoing findings of fact, but it is obvious that they afford no comfort to the appellant in the instant case by reason of the difference in the facts, and of the findings and conclusions of the trial court thereon.

[3] As to the appellant's contention that vehicular traffic and travel other than by railways along or even across Shatto Place has rendered undesirable residence therein, he cites no authority to support such a theory. It is a matter of common knowledge that boulevards, avenues, and broad highways best suited for the use of vehicles usually traverse suburban areas devoted to and favored for residential uses. To hold that the several broad boulevards and avenues which lead from Los Angeles to the sea have by their increasing travel destroyed restricted residential uses of property along

their route would be contrary to both reason and experience; besides the trial court has found to the contrary.

[4] The appellant's second contention upon this phase of his appeal is that the fact that the restrictions in the four deeds above referred to which are similar to those in the conveyance to his predecessor run for a limited time, viz., until 1955, while the restrictions, etc., in his predecessor's deed have no such limitation. The reply which the respondents make to this contention, and the one which the trial court apparently adopted, is that his claim will not be available to the plaintiff until the year 1955, when, for the first time, whatever injurious difference there might be from the operation of these restrictions will arise. In the meantime their operation is uniform upon all of the lot owners whose deeds contain them and they are, therefore, equally binding upon all. We are satisfied with this contention.

[5] The next and in fact the main and most serious contention which the appellant urges upon this appeal is that the changes in the westward movement of business in the city of Los Angeles and in the consequent uses of property in the neighborhood of Shatto Place have been such as to render it inequitable to enforce the restrictions and conditions subsequent contained in the deeds to the original grantees of the lots in Shatto Place against the present owners of any and all of the lots therein affected thereby, and particularly against the plaintiff as the present owner of the particular lots described in his supplemental complaint. At the outset of the discussion as to the merits of this contention it is to be noted that the appellant does not contend that any changes have occurred in the uses of lots within Shatto Place other than those connected with the building and operation of the electric railway with its station and approaches, the effect of which has already been discussed and the change which he is attempting to make in the use of one of his own lots therein through the erection of an oil station thereon. Otherwise Shatto Place remains the exceptionally high class residential district having an area of about 35 acres which its original owner through its subdivision and sale of its lots with the restrictive covenants above referred to designed it to be. It is contended by the respondent herein, and is not denied, that there is no like area in the city of Los Angeles so uniformly occupied with

palatial homes as is this district. With respect to the changes which since its original subdivision have occurred in the neighboring region these were originally found upon specifically by the trial court, as hereinabove set forth, upon the first trial of this cause. Upon the second trial thereof the court in substance adopted the detail of its former findings in the foregoing regard, and as to whatever additional evidence was presented upon that issue upon the second trial the trial court found "that the changes in use of property outside of but adjacent to and in the vicinity of Shatto Place herein found to have taken place are the same sort and character of changes of use which the court found to have taken place in and by its written findings of fact filed herein upon the first trial of this cause, and that the difference in the said change of use and in the conditions affecting the property in the vicinity of said Shatto Place is one of degree but not of kind." The trial court further found "that it is not true that the change in uses to which the land surrounding and adjacent to Shatto Place has been put has been complete; nor is it true that any of said changes in use of property have taken place within said Shatto Place; nor is it true that any of said changes of use of property have made the property within Shatto Place or any of the lots contained therein wholly unadapted or undesirable for residential purposes." These findings taken in connection with the express averments of the cross-complaint of the defendant and respondent Clara R. Shatto and of the further finding of the trial court "that each and all of the allegations of the cross-complaint of the defendant Clara R. Shatto are true," amount to a finding by the trial court that whatever changes it may have found to have occurred in the uses of property adjacent to, in the vicinity of, or in the near neighborhood of Shatto Place have not, thus far at least, affected the availability, desirability, or value of all or any of the lots within its area for such restricted residential uses as were contemplated and provided for in the deeds to the original grantees thereof. We are of the opinion that the evidence introduced before the trial court upon the second trial of this cause was and is sufficient to justify the foregoing findings of fact by the said court; and this being so we are further of the opinion that the conclusions of law which the trial court based upon its aforesaid findings of fact are fully

supported by the great weight of authority upholding the
validity and sustaining the enforcement of like covenants
and conditions subsequent entered into between the owners
and their grantees of lots within areas devoted to strictly
residential uses. The trial court held, conformably to the
decision of the appellate tribunal in *Strong* v. *Shatto, supra,*
and the cases cited therein, and also consistently with the
decision of this court in the case of *Martin* v. *Holm,* 197
Cal. 733 [242 Pac. 718], that the covenants, restrictions, and
conditions subsequent in the deeds of said grantor to her
grantees are in the nature of easements or servitudes for the
benefit of each and every other parcel of land in said tract,
and that such covenants, restrictions, and conditions subse-
quent run with the land. The trial court was also correct,
in conformity with the ruling in the case of *Miles* v. *Clark,*
44 Cal. App. 539, 549 [187 Pac. 167], in holding that the
changed conditions which it found to exist in and about
property outside of Shatto Place ''have not made and do
not make it inequitable to enforce said conditions, reserva-
tions, restrictions and covenants or any of them.'' The
cases cited by the appellant himself, such as the case of
*Columbia College* v. *Thacher, supra,* and *Jackson* v. *Stevin-
son,* 156 Mass. 496 [32 Am. St. Rep. 476, 31 N. E. 691],
recognize the rule that restrictions upon the uses of resi-
dential areas which are interbinding upon each and all of
the purchasers of lots within such areas, and which have for
their purpose that of making the locality a suitable one for
residences, will be enforced in equity unless and until,
''owing to the general growth of the city and the present
use of the whole neighborhood for business this purpose can
no longer be accomplished.'' In the last above cited case
from which the foregoing excerpt is taken the court aptly
says that whether the right to equitable relief exists ''de-
pends upon the circumstances of each case.'' These are
reflected in the findings of the trial court and if there is
sufficient evidence to sustain them the discretion exercised
by the trial court in granting or refusing such equitable re-
lief ought not, except in case of clear abuse, to be disturbed
upon appeal. This rule was given application in the major-
ity opinion of this court in the case of *Downs* v. *Kroeger,*
200 Cal. 743 [254 Pac. 1101], wherein the trial court upon
a somewhat different state of facts had refused to grant

equitable relief.  It should for a like reason be given appli-
cation to the instant case wherein the trial court has upon
the facts found exercised its discretion in favor of granting
to the cross-complainant the equitable relief prayed for in
her cross-complaint.

[6]  The appellant makes the final contention that the
trial court was in error in the refusal to admit in evidence
certain zoning ordinances of the city of Los Angeles which
affected property in the neighborhood of and in part within
said Shatto Place, including the lots owned by the sub-
stituted plaintiff herein, and which ordinances had been
pleaded in his supplemental complaint.  The ground given
by the trial court for such refusal was that the enactment
by the city of such ordinances could not be claimed to
directly affect the covenants, conditions, or transfers be-
tween private parties relating to their rights and obligations
respecting the property in question; and that the intima-
tions or recitals in such ordinances as to the existence of
changed conditions in or in the neighborhood of the prop-
erty under consideration as being a restricted area were not
to be considered evidence of the existence or nonexistence
of the actuality of such changed conditions.  It may be
that the adoption of such ordinances by the municipality
affecting property subjected to residential restrictions would
shed some light upon the question as to whether, in the
course of civic growth, changed conditions had arisen in the
neighborhood of such property which would render the
application of such zoning provisions advisable and hence
render the admission in evidence of such ordinances proper
in a litigation between strictly private parties involving
their contractual rights and obligations.  The appellant has,
however, furnished us with no authority supporting this
view; but even assuming it to be correct, we do not con-
sider that the error, if it be such, of the trial court in the
exclusion of such indirect evidence would be sufficiently
prejudicial to justify a reversal in view of the fact, as
shown by the record herein, that the respective parties to
this action presented an abundance of direct evidence with
respect to the actual conditions and changes in conditions
which had taken place in and in the neighborhood of the
area covered by the restrictions in question.  Reviewing
this record as a whole we conclude that the findings of fact

of the trial court are sufficiently supported by the direct evidence in the case; that its conclusions as to the law applicable to such a state of facts are correct, and that it did not abuse its discretion in awarding to the cross-complainant herein the relief sought in the prayer of her cross-complaint.

The judgment is affirmed.

SHENK, J., Concurring.—I concur in the judgment for the reason that under the pleadings and evidence on the second trial it may rightly be said (1) that it was competent for the trial court to grant the relief prayed for in the cross-complaint of Clara R. Shatto, and (2) that there was evidence to support the finding that the conditions in and surrounding said tract had not so changed as to render it inequitable to enforce said restrictions. It may also be said that if said finding had been the other way likewise it would have had sufficient evidentiary support. Under these circumstances this court may not properly disturb the finding now made on that subject (*Downs* v. *Kroeger,* 200 Cal. 743 [254 Pac. 1101]; *Miles* v. *Clark,* 44 Cal. App. 539 [187 Pac. 167]). The finding on this issue was favorable to the plaintiff on the first trial. The judgment on that trial was reversed for the reason, as I understand the decision in *Strong* v. *Shatto,* 45 Cal. App. 29 [187 Pac. 159], that an action brought by a lot owner in the tract to quiet his title against such restrictions could not prevail when it appeared that there had been no breach of the restrictions nor any attempt by an interested property owner to enjoin a breach or to enforce a forfeiture. It was held on the former appeal, following a recognized and controlling line of authorities, that a land owner in the tract had no standing in court in his endeavor to quiet his title against and to have declared void the restrictions on his lot, and that it was only when it was sought to enjoin a breach of such restrictions or to declare a forfeiture that equity would refuse, because of changed conditions, to lend its aid in the enforcement thereof. It was further held on the former appeal that it was "premature, at least, to determine the equities of the parties as they might exist at some future time in the event of such breach." This action was commenced prior to 1921. In that year sections 1060, 1061, and

1062, relating to declaratory relief, were added to the Code of Civil Procedure. The supplemental complaint was filed after those additions to the code. This change in the law was, in my opinion, sufficient to enable the substituted plaintiff to proceed thereunder and to have his status declared under the conditions as were then shown to exist, and this, notwithstanding the old rule which required him to be hazardously active in the breach of such restrictions and passive in litigation. The history of this case would indicate that on the second trial undue importance was given to the decision on the former appeal. As stated, the finding as to changed conditions was favorable to the plaintiff on the first trial. On the second trial the court found that the changes in the use of property adjacent to and in the vicinity of Shatto Place "herein found to have taken place are the same sort and character of changes of use which the court found to have taken place in and by its written findings of fact filed herein upon the first trial of this cause, and that the difference in the said change of use and in the conditions affecting the property in the vicinity of said Shatto Place is one of degree and not of kind." Nevertheless the court proceeded to and did deny the substituted plaintiff any relief when not only the same business conditions surrounding the tract were proved as were shown to exist at the former trial but also further development of business adjacent to the tract was shown to have taken place. It cannot be disputed that, notwithstanding the findings on the first trial, the trial court on the second trial had the right to weigh the evidence and to find either way on the conflicting evidence then presented, but it seems to me that the result of this litigation has become abortive if the decision on the former appeal was considered, as it must have been, as in any way establishing the law of the case. In view of the fact that the conditions surrounding the tract are or may be continually changing no question of the law of the case could properly arise as affecting the substituted plaintiff's standing in court unless it be true, which I think it is not, that the declaratory relief sections of the code have no application to this sort of an action.

The trial court also found that although the changes in the use of the property surrounding the tract had taken place as alleged in the supplemental complaint yet "it is

not true that the change in uses to which the land surrounding and adjacent to Shatto Place has been put has been complete.'' The main opinion quotes this finding as apparently having some bearing on the case. If from such finding it may be concluded that the tract in question must be entirely surrounded with skyscrapers or other business establishments in order that the rule of changed conditions be made applicable I am not prepared to subscribe to that doctrine. If the finding points to any other conclusion I am not able to discover it. However, disregarding said finding, whatever it may mean, the judgment appealed from seems to be immune from successful attack in the light of the record on which it is based.

Preston, J., concurred.