[L. A. No. 10786. In Bank.—August 31, 1931.]

ARTHUR C. HESS et Ux., Respondents, v. COUNTRY CLUB PARK (a Corporation) et al., Defendants; LEONA MOLONY et al., Interveners and Appellants.

Fred N. Arnoldy for Appellants.

William Ellis Lady for Respondents.

WASTE, C. J.—This is an action to quiet title and to annul certain building restrictions contained in the deeds through which the plaintiffs deraign their title to lot 31 of tract No. 1600 in the city of Los Angeles. Plaintiffs

seek to avoid the effect of the restrictions by reason of an asserted change of conditions in the character of the neighborhood, it being alleged that their property is no longer useful for residential purposes. The action was brought against the defendant Country Club Park, a corporation, the original owner and subdivider of the tract. Thereafter a complaint in intervention was filed by the remaining defendants who are owners of other lots in the tract. In due course the pleadings were amended and the interveners made parties defendant. Following a trial before the court sitting without a jury, judgment for plaintiffs was entered as prayed for. From this judgment all of the defendants, save and except the corporation, have appealed.

Citing the case of *Strong* v. *Shatto*, 45 Cal. App. 29, 37 [187 Pac. 159, 162], the appellants contend that the respondents are not, under the allegations of their complaint, entitled to the relief granted. That case declares, in part, that "The doctrine that equity will not enforce restrictions on the use of property, we think, only applies to cases where it is sought to enforce such restrictions by equitable proceedings, where the reason and justification for them has failed through changed conditions. In other words, under such circumstances a court of equity may deny the relief sought. But the rule does not go to the extent of permitting parties whose land is subject to the legal restraint of such limitations to bring action to quiet their title against such contractual obligations, because of changed conditions. Contractual obligations do not disappear as circumstances change. It is only the granting of equitable relief, and not the binding force of the restrictive covenant, that is affected by a change in the conditions. . . . As there has been no breach of the conditions here, and no attempt to enjoin such a breach or to enforce a forfeiture, we think it premature, at least, to determine the equities of the parties as they might exist at some future time in the event of such breach."

This court denied a petition for hearing in the Shatto case. However, subsequent to that decision, and in the year 1921 (Stats. 1921, p. 689), section 1060 of the Code of Civil Procedure was enacted. In brief, this section provides that "Any person interested under a *deed*, will or other

written instrument, or under a contract, or who desires a declaration of his *rights* or *duties* with respect . . . to, in, over or upon *property* . . . may, in cases of actual controversy . . . bring an action . . . for a declaration of his rights and duties in the premises. . . . He may ask for a declaration of rights or duties, either alone or with other relief. . . . The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force of a final judgment. Such declaration may be had *before* there has been any breach of the obligation in respect to which said declaration is sought." (Italics ours.)

In the case of *Strong* v. *Hancock,* 201 Cal. 530, 542, 543 [258 Pac. 60, 65], counsel presented the question whether or not the enactment of section 1060, *supra,* required an abandonment of the rule, announced in *Strong* v. *Shatto,* that prior to the breach thereof an action would not lie at the suit of the owner of the servient tenement to quiet his title as against covenants or restrictions running with the land. We found it unnecessary to pass upon the point in that case for the reason that there had been filed by the defendant therein a cross-complaint alleging facts, found to be true by the trial court, entitling the defendant and cross-complainant to affirmative relief by way of approval and enforcement of the restrictions there involved. By reason of our conclusion to affirm the trial court's findings and decree in that case we stated in the opinion that "We do not find it necessary to consider what the said plaintiff's remedies might have been had we arrived at the conclusion that the cross-plaintiff was not entitled to the relief which the trial court accorded her." However, in a special concurring opinion Mr. Justice Shenk expressed himself as satisfied that the declaratory relief statute set out above was sufficiently broad and comprehensive in its language to have application to this sort of action. He then stated: "This change in the law (the enactment of section 1060, *supra*) was . . . sufficient to enable the substituted plaintiff to proceed thereunder to have his status declared under the conditions as were then shown to exist, and this notwithstanding the old rule which required him to be hazardously active in the breach of such restrictions and passive in litigation." We are inclined to agree with the

views of Mr. Justice Shenk so succinctly stated in his concurring opinion in the Hancock case.

The pleadings in this case present a practical situation which calls for declaratory relief. The owner of a lot in a tract of land claims that certain restrictive covenants and conditions are no longer enforceable because of a change in the character of the neighborhood. The original grantor and the owners of other lots in the tract claim, on the contrary, that the covenants and conditions are still enforceable, that they constitute easements upon the lot in question and that their violation will be ground for injunctive relief and the forfeiture of the lot owner's title. If the lot owner can obtain a declaration in his favor, he may safely proceed to improve his property as he wishes. If such a declaration is refused, he is put in the hazardous position of being obliged to violate the terms of the restrictions before he can know whether or not he must suffer the penalties mentioned. It is inconceivable that he must run the risk of forfeiting any further investment, or even his title to the land, in order to obtain an adjudication of his rights. It seems clear that the declaratory relief statute was intended to relieve a party from exactly such a dilemma. Unless it can be availed of in a situation such as this, it will lose a large part of the value which, upon its enactment, was supposed to attach to it. Under the terms of the statute the declaration may be either affirmative or negative in form and effect, and in a case such as this the trial court is, therefore, empowered either to make a declaration, at the plaintiff's request, that he is not under a duty to comply with the restrictive covenants, or, at the request of the defendants, to make a declaration that he is. That an "actual controversy" exists in such a case goes without saying.

This brings us to a consideration of the propriety of the findings and conclusion of the court below that the character of the neighborhood surrounding the plaintiffs' lot has sufficiently changed to leave their property no longer useful or practical for residential purposes, thus rendering it inequitable and unjust to enforce the restrictions or to declare them to be valid subsisting easements. We have examined the entire record in this cause and find that upon this phase of the litigation the decision of the District

Court of Appeal (First Appellate District, Division Two) accurately narrates the situation developed before the trial court. For this reason we adopt as and for the decision of this court the following portion of the opinion prepared by Mr. *pro tem.* Justice Burroughs [296 Pac. 300, 301]:

"On January 23, 1912, the defendant Country Club Park, a corporation, was the owner of all the lands embraced in the tract No. 1600, hereinabove referred to. On said date, the corporation, having previously subdivided said tract of land, filed a subdivision map thereof, as provided by law. On May 31, 1916, said corporation conveyed to one Edwin B. Sword lot No. 31 of said tract, and through mesne conveyances respondents are now the owners of said lot. Each one of the appellants owns a lot in said tract No. 1600. In the several deeds, by which both the appellants and respondents obtained their respective titles, there is inserted certain restrictions as to the purposes for which said lots may be used. So far as necessary to a decision of the questions involved on this appeal, it is sufficient to say that the use is limited to residences only, to cost not less than $6,000, and to be located within certain lines. There are provisos attached to said conditions and restrictions by which, if there be any violation thereof by the grantee or his successors in interest, the premises revert to the grantor, its successors or assigns; 'and as to the owner of and the successors in interest of any owner of any other lot or lots in said tract, all and singular said conditions are and shall be covenants running with the land for the benefit of the grantor herein and for the benefit of each and all of the lots in said tract, and of the owners of such lots in said tract and their respective successors in interest, and the breach of any of said covenants and conditions or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by any or either of such owners, their heirs, assigns or successors in interest'. It is also provided that the restrictions are of no effect after January 1, 1935; that the restrictions and conditions subsequent and the date of termination thereof 'apply to and bind only the property hereinabove described and hereby conveyed and the owners thereof, and the grantor expressly reserves the right to make and/or apply the same or varying or different restrictions and conditions subsequent or

to omit the same entirely, respecting other lots in said tract, and/or property owned by the grantor'. The court found, among other matters, that since the execution and delivery of the said deeds and conveyances, the conditions in the neighborhood where said tract is situated have changed, and that the value of said lots has greatly increased; that said property, and particularly said lot 31, is in a section devoted exclusively to and essentially useful for business purposes; that the plaintiffs are ready, able and willing to improve said lot for business purposes, and that the improvement thereof will not injure or damage the property of the defendants or any thereof, but on the contrary such improvements will make the property in that vicinity more valuable; that the conditions and restrictions are no longer beneficial for the purposes for which they were placed on said property, and that they have now become oppressive and inequitable, and to enforce them would be inequitable and unjust. The exhibits in the case show that said lot 31 is situated on the northeast corner of the intersection of Pico street and Wilton place; that the appealing defendants own lots on Wilshire place north of said lot 31, but not facing on Pico street. Charles B. Felts testified that he has been sales manager for the defendant Country Club Park for about thirteen years last past; that the last residence on said tract to be erected on Pico street was about eight years prior to October, 1927, the time of the trial; that lot 31 sold in 1912 for $4,000, and at the time of the trial, without the restrictions, had a value of about $40,000, and that other property there has a similar value; that Wilton place has many valuable homes. It was stipulated by the parties that Pico street is a business street from this tract on east. W. C. Skaggs testified that Pico street is a business street, and that the only practical purpose for which lot 31 could be used was for business purposes; a business house on this lot would increase the value of every lot in the tract; it would not harm the tract. F. S. Kadletz testified that his occupation was a real estate appraiser, that he had a large experience in that line of work for the city and county and also for individuals; that he was familiar with the Country Club Park tract of land and with said lot 31; that said lot was only suitable for business purposes; that no other property in the tract would be damaged if it

were used for business purposes; that it would not damage the residences in this tract to erect a store building on said lot, because the character of the property as business property was already fixed. The plaintiff Arthur C. Hess testified that the taxes on said property were between $300 and $400 per year; that the assessment for the street lighting system was $360 per year; that the property was not desirable as residence property. It was stipulated that in 1912, when the tract was subdivided, the immediate neighborhood in which lot 31 and the adjoining property was situated was strictly a residential district; that at that time Pico street had a width of 50 feet and since then has been widened to 80 feet; that since 1921 said lot and the lot immediately adjoining it to the north and for two lots deep on each side of Pico street from east of Weston avenue westerly to the city limits has by an ordinance adopted by the city council of the city of Los Angeles been placed in a zoning district; that by virtue of said ordinance the only class of buildings that may be erected in said district, which includes said lot 31, are certain defined places of business. The exhibits attached to the transcript show that to the east of said lot on Pico street are many business places, to the west of said lot on said Pico street there are a number of business houses, such as a drug store, market, barber shop, oil stations, etc. It is true that none of these buildings is within said tract No. 1600 and that there have been no violations of the building restrictions in said tract. It further appears from the evidence that the said tract contains a total of 165 lots; that the defendant Country Club Park, a corporation, still owns 14 lots; that three lots have been sold by the last named defendant without any restrictions contained in the deeds; that said tract contains 75 lots, the restrictions upon which expired January 1, 1925; leaving a total of 73 lots upon which, under the covenants contained in the deeds, the restrictions expire on January 1, 1935.''

A careful review of the record and an inspection of the several exhibits introduced convinces us there is ample evidence to support the findings of the court below that it would be unjust, oppressive and inequitable to enforce or give effect to the restrictions or easements relied on by the appellants. That courts of equity may under such cir-

620

cumstances decline to lend their aid is now well settled. (*Downs* v. *Kroeger*, 200 Cal. 743, 747 [254 Pac. 1101, 1102]; *Strong* v. *Hancock, supra*, 551.) In the case first cited it is held that "where there has been a change in the uses to which the property in the neighborhood is being put, so that such property is no longer residence property,. it would be unjust, oppressive and inequitable to give effect to the restrictions, if such change has resulted from causes other than their breach". The case is also authority for the proposition that the findings of the trial court are binding upon appeal when, as here, they are supported by substantial evidence.

For the foregoing reasons the judgment must be and it is hereby affirmed.

Preston, J., Shenk, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.