[S. F. No. 18827.   In Bank.   June 21, 1955.]

S. WOLFF, Respondent v. JOSEPH P. FALLON et al., Defendants; R. T. STEPHENS et al., Defendants and Appellants; INGLESIDE TERRACES HOME OWNERS ASSOCIATION (a Nonprofit Corporation), Intervener and Appellant.

John A. Gorfinkel and Julian W. Mack II for Appellants.

Jefferson E. Peyser and Pierce N. Stein for Respondent.

GIBSON, C. J.—Plaintiff, owner of a vacant lot in San Francisco, obtained a judgment quieting title and declaring

that building restrictions imposed on her property by the original subdivider are no longer binding, with the exception of a 15-foot setback line to which she agreed. Defendants, who are property owners in Ingleside Terraces, the tract in which the lot is located, appeal from the judgment.

When the subdivision was created in 1913, about 20 lots in each of two separate areas were left unrestricted, and approximately 740 lots were set aside for residential purposes. The original deeds to all purchasers of the residential lots contained building restrictions which were unlimited as to time and enforceable by every other owner. It was provided that no building other than a single-family dwelling not exceeding two stories in height should be placed on a lot or within certain specified distances from the side lines of the lot, that no main wall should be nearer to the street than the line indicated upon the official plat, and that no building costing less than $4,000 should be erected. Plaintiff took title to her lot in 1938, knowing of the restrictions.

Ingleside Terraces includes all the lots but one in an area bounded by Junipero Serra Boulevard on the west, Ocean Avenue on the north, Ashton Avenue on the east, and Holloway Avenue on the south. The lot which is not part of the tract is located on the southeast corner of Ocean and Junipero Serra. In 1913 this lot was occupied by a roadhouse, and it is now used for a gasoline station. Plaintiff's property is on the southwest corner of Ocean and Paloma, which is the next street intersecting Ocean to the east of Junipero Serra. One of the two areas which were excluded from the restrictions by the subdivider consists of all the lots fronting on Ocean in the block between Junipero Serra and Paloma, except the lot owned by plaintiff. The other is a comparable area three blocks to the east and is composed of lots fronting upon Ocean and Ashton.

The trial court, after making detailed findings as to changes which had occurred in the neighborhood since 1913, found and concluded that plaintiff's lot was not now suitable or desirable for residential use but was essentially business property, that its use for commercial purposes would not detrimentally affect the adjoining property or neighborhood and might be beneficial, and that, by reason of the changed conditions in the neighborhood and present character of the block, enforcement of the restrictions would be inequitable and oppressive and would harass plaintiff without benefiting the

adjoining owners. The findings, if supported by the evidence, warrant granting relief from the restrictions. (*Marra* v. *Aetna Construction Co.*, 15 Cal.2d 375 [101 P.2d 490]; *Hurd* v. *Albert*, 214 Cal. 15 [3 P.2d 545, 76 A.L.R. 1348]; *Hess* v. *Country Club Park*, 213 Cal. 613 [2 P.2d 782]; *Downs* v. *Kroeger*, 200 Cal. 743 [254 P. 1101].)

The record shows that in 1913 and for several years thereafter the lots in the tract on the south side of Ocean between Junipero Serra and Paloma were vacant. All of these lots, including plaintiff's, were zoned as a "Commercial District" in 1921, under an ordinance permitting use of the property for certain commercial purposes. Sixteen single-family dwellings were constructed on these lots in 1923, and the area was later converted into a predominantly commercial district. At the time of trial there were 19 buildings on the south side of Ocean between Junipero Serra and Paloma, with plaintiff's lot being the only vacant one. Three of the buildings were residences; the others were used for commercial purposes and included a market, a pharmacy, a dance studio, a liquor store, a power substation, and medical and dental offices. A popcorn stand and a dental office were located on a restricted lot on Ocean about three blocks east of plaintiff's property. There were also three large homes in the tract in which more than one family lived.

There was evidence that over the years there had been an increase in traffic on Ocean Avenue, which had become a "main traffic street" used by commercial vehicles to a considerable extent; that an arterial signal had recently been installed at Junipero Serra and Ocean; that increases in traffic had required more street lighting; and that there were about twice as many street lights on Ocean between Junipero Serra and Paloma as on a normal residential block of the same length. Streetcars ran on Ocean during the day and buses at night, and the streetcar traffic had substantially increased since 1913.

There was testimony by real estate brokers that plaintiff's lot was unsuitable and undesirable for residence purposes because of the parking of trucks on Ocean, the hazard to children, and the exposure to the business traffic, dirt, and noise of a main street; that there was no ready market for the lot as residential property; that it would be extremely difficult to sell the lot for construction of a home at "anything like a reasonable price"; that the value of the lot for residential use was between $3,000 and $4,000, whereas its value for com-

mercial purposes was from $15,000 to $17,000; that an "intelligent development" of the lot, namely, its "best and highest use," would not hurt either the block or the neighborhood; and that a business similar to the other improvements on the street would not be detrimental to the adjoining owner or neighborhood and might be beneficial.

Photographs representing the conditions existing at the time of trial in the block in question were admitted in evidence. The judge stated that he would view the premises, but the record does not affirmatively show that he did so.

It is argued that the growth of business in the block where plaintiff's lot was located did not constitute such a change of conditions as would permit lifting the restrictions because commercial usage was in accordance with the plan of the original subdivider who had left that area unrestricted. As we have seen, however, there was also evidence that there had been a substantial increase in streetcar and other traffic and in the noise resulting therefrom, that encroachment within the restricted portion of the tract had occurred, and that plaintiff's lot had been zoned by ordinance as part of a commercial district.

When taken as a whole, the record is sufficient to support the findings made by the trial court.

The judgment is affirmed.

Shenk, J., Carter, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

Plaintiff's lot is a corner lot situated on the southwest corner of Paloma Avenue and Ocean Avenue in a high-class residence district known as Ingleside Terraces. It conforms generally in shape and size to the other restricted lots on Paloma Avenue which lots are approximately 50 feet or more in width and 110 feet or more in depth. There are no unrestricted lots on Paloma Avenue. The relatively few unrestricted lots on the southerly side of Ocean Avenue are generally smaller in width and depth than the restricted lots in the tract, which number more than 700. There is no commercial development on the northerly side of Ocean Avenue in the near vicinity. In this connection, the trial court found that for a distance of approximately one-half mile the northerly side of Ocean Avenue "is occupied solely and exclusively by single family dwellings, a church and two public schools."

The effect of the judgment, which is affirmed by the majority opinion, is to lift the restrictions on plaintiff's lot, thereby

permitting commercial development to invade the unbroken residential development on Paloma Avenue. This is said to be justified on the basis of changes which have occurred since the restrictions were imposed. I find no evidence of changes which would justify the nullification of these restrictions.

Within the tract, the development has occurred exactly as planned, except for minor deviations on four out of a total of approximately 800 lots in the entire tract, which deviations might be enjoined. Without the tract and in the general vicinity, no changes have occurred so as to make applicable the rule of *Hess* v. *Country Club Park*, 213 Cal. 613 [2 P.2d 782], and *Downs* v. *Kroeger*, 200 Cal. 743 [254 P. 1101]. Not a single case presenting similar facts has been cited to sustain the nullification of the restrictions under consideration. On the contrary, one of the main cases upon which the majority relies clearly indicates that the changed conditions in the neighborhood must have "rendered the purpose of the restrictions obsolete." (*Marra* v. *Aetna Const. Co.*, 15 Cal.2d 375, 378 [101 P.2d 490].) This court further said: "But, if the original purpose of the covenant can still be realized, it will be enforced even though the unrestricted use of the property would be more profitable to its owner." (Pp. 378-379.) (See also *Strong* v. *Hancock*, 201 Cal. 530 [258 P. 60]; *Robertson* v. *Nichols*, 92 Cal.App.2d 201 [206 P.2d 898].)

There is no finding by the trial court that any alleged changes in the neighborhood have rendered the purposes of the restrictions "obsolete" or that the original purpose of such restrictions cannot be realized; and if any of the trial court's findings may be said to be to that effect, I find no evidence to support such findings.

It seems clear that a line must be drawn somewhere dividing residential and commercial development in any tract where both are to be permitted. It seems equally clear that the residential lots which are contiguous to commercial lots will necessarily be somewhat less valuable. This situation is inherent in any plan of restrictive covenants to provide for orderly development; and it cannot justify the lifting of the restrictions on such contiguous lots unless the plan itself is to be destroyed.

The plan of the original owners who imposed the restrictions was a reasonable one, which gave assurance to the purchasers of single family dwelling lots, and particularly those on Paloma Avenue, that no commercial development would invade that avenue. That plan appears as reasonable today

as it was when formulated by plaintiff's predecessors. Nothing has occurred in the intervening years other than the normal and anticipated development of the tract and surrounding area. Plaintiff, as the owner of a lot which is contiguous to an unrestricted lot, as well as to a restricted lot, knew of the restrictions when he made his purchase. He should not be permitted to evade those restrictions merely because it would be to his advantage to do so. His neighbors were entitled to rely upon the restrictions and he should be bound thereby, at least until such time as there may be such abnormal and unanticipated changes as to make the restrictions ''obsolete.''

I would reverse the judgment.

Traynor, J., concurred.